JAMES W. BURNSIDE, plaintiff in error, *vs.* BIRD TERRY *et al.*, defendants in error.

Where an instrument recites that B. held judgments against F., amounting to $3,000, and that F. had obtained the benefit of the homestead law upon his realty without objection from B., upon the following agreement: That if F. did not pay the money due upon the judgments on or before January 1st, 1871, then lot of land number forty, valued at $1,000, is to be the right and property of B., and said judgments are to be considered satisfied; in consideration of which, F. and his wife, L., conveyed the lot of land to B. in fee simple, and declared that the instrument was a conditional deed and not a mortgage, and was to become absolute upon the non-payment of the sum of money due on said judgments at the time specified, and that B. should have the right to enter and take possession at the expiration of the time, said instrument is a deed conveying the land upon a condition subsequent, and not a mortgage. (R.)

The approval of the Ordinary to the alienation of homestead property is required for the protection of the wife and children; and this is not

only a proceeding before the Ordinary, but is an important function which he is required to perform in the exercise of his judgment as a judicial officer, and he ought to be clearly satisfied in all cases that the wife's consent is freely and voluntarily given, and that the sale will be for the benefit of the wife and children. (R.)

A deed to property covered by a homestead, approved by an Ordinary who was related to the grantee within the fourth degree of consanguinity, is void. (R.)

Conditional deed or mortgage. Relationship of Ordinary. Separate estate. Homestead. Before Judge DAVIS. Hall Superior Court. March Term, 1872.

James W. Burnside brought complaint for a certain tract of land situate in the county of Hall, known by number forty, in the tenth district of said county, against Bird Terry, Bowling W. Field and his wife, Levada Field. Defendants pleaded the general issue, and also that the title to said land was in Bowling W. Field and his said wife.

Upon the trial, plaintiff introduced the following evidence:

"GEORGIA—LUMPKIN COUNTY:

"Whereas, James W. Burnside, of said county and State, holds in his own right divers judgments and *fi. fas.* from the Superior Courts and Justice Courts of said county against Bowling W. Field, of the same, amounting in the aggregate to the sum of $3,000, and the said Field has claimed and obtained the benefit of the homestead law upon a considerable estate of real property, to which the said Burnside filed no objections, upon the following agreement: That if the said Bowling W. Field does not pay or cause to be fully paid off said money due on said *fi. fas.* on or before the first day of January, in the year of our Lord (1871) eighteen hundred and seventy-one, then the fraction or lot of land number (40) forty, in the (10th) tenth district, Hall county, Georgia, known as the "Field's fraction," on the Chestatee river, valued at the sum of $1,000, is the right and property of the said James, his heirs or assigns forever in fee simple, and the said *fi. fas.* and judgments aforesaid are to be held and

Burnside *vs.* Terry *et al.*

considered in law and equity fully paid off and satisfied as to the said Field, his heirs and representatives. Now, in consideration of the premises, the said Bowling W. Field and his wife, Levada Field, have and do by these presents bargain, sell and convey and confirm said lot of land, with all its rights, members and appurtenances unto him, the said James W. Burnside, his heirs and assigns forever in fee simple, the right and title whereof the said Bowling W. Field, his said wife, their heirs, executors and administrators will warrant and defend the right and title against themselves, their heirs and assigns, and the claims of all other persons whatever. This is a conditional deed and not a mortgage, and becomes absolute upon the non-payment of the sum of money due on said *fi. fas.* and judgments at the time specified, and the said James W. Burnside has the right to enter and take possession of said lot of land at the expiration of the time.

"In testimony whereof, we have each freely and voluntarily hereunto set our hands and seals, this the 30th day of April, 1869.

(Signed) "BOWLING W. FIELD, [L.S.]

"LEVADA ⋈ FIELD, [L.S.]
her
mark.

"Signed, sealed and delivered in presence of:

"B. F. SITTON,

"McDUFFIE R. MOORE, J. P."

"GEORGIA—LUMPKIN COUNTY:

"Upon hearing the foregoing, and considering the interest of all parties, it is hereby ordered and adjudged that said deed of conveyance from Bowling W. Field and his wife, Levada Field, to James W. Burnside, be hereby approved and delivered, according to the statute in such cases made and provided.

"Given under my hand and seal of office this 30th day of April, 1869.    W. A. BURNSIDE, *Ordinary*."

Samuel Stephens testified, that he believed the rent of the property to be worth from ninety to one hundred and fifty bushels of corn; corn was worth, in 1871, sixty cents per bushel. Bird Terry was the tenant in possession. Was present when a *fi. fa.* was levied on the property as belonging to Field a short time before the same was set off as a homestead; the rent was worth about $90, in 1871; the *fi. fa.* was for about $8,000.

Defendants admitted the land to be in Lumpkin county, and that they had possession. Plaintiff closed.

Defendants introduced the following evidence: An exemplification from the records of the Superior Court of Lumpkin county, showing that said land, together with other property, had been set apart as a homestead to Bowling W. Field, on April 24th, 1869.

The depositions of McDuffie R. Moore are as follows: The official signature to the deed of his name is genuine; was in his office, in Dahlonega, when he signed the deed as subscribing witness; when he signed the deed, Bowling W. Field and Benjamin F. Sitton were present; Mrs. Levada Field was not present; to the best of his recollection, Levada Field's name was signed to said deed at the time it was presented to witness; the deed is in the handwriting of Weir Boyd, Esq.; B. F. Sitton acknowledged his signature before witness; Bowling W. Field's name was signed before the deed was presented to witness; W. A. Burnside is the brother of James W. Burnside; since witness attested said deed, Mrs. Levada Field has acknowledged her signature; B. W. Field told witness, at the time of the presentation of the deed, that it was his wife's signature; the signatures of Bowling W. Field and of B. F. Sitton are genuine; witness has heard Mrs. Levada Field say that "she signed the deed; that her husband was in debt, and that she was willing to do everything she could to help him out, and that they told her it would be the best she could do."

Mrs. Levada Field testified as follows: The morning

Burnside *vs.* Terry *et al.*

after B. F. Sitton surveyed off the homestead in Lumpkin, her husband asked witness to sign that paper, (the deed;) witness said she did not wish to sign any paper, and asked her husband and B. F. Sitton if they could not arrange matters without her. Mr. Sitton said to witness, " that it was the best she could do; that it might be carried to Court and ruin her; it might get into the big Court and she lose her home." Witness then signed the paper by taking the end of the pen which Mr. Sitton held; the paper was not read over in her hearing; did not hear it read after she made her mark; witness' husband said nothing more after asking her to sign the paper; Mr. Sitton did all the talking; witness never went before Mr. Burnside, the Ordinary, for him to approve the deed; never saw the deed afterwards.

Robert A. Quillian testified, that James W. Burnside, plaintiff, and William A. Burnside, Ordinary, are brothers. Defendants closed.

Plaintiff in rebuttal read the depositions of B. F. Sitton, as follows: Witness saw Bowling W. Field and Levada Field sign the deed, and signed it himself as a subscribing witness; the deed was read to Levada Field before she signed; she hesitated some time, but finally, voluntarily and without compulsion, signed it; B. W. Field, Levada Field, their son, John Field, and witness, were all who were present. At the time of the signing, it was agreed that Bowling W. Field, Levada Field and witness should acknowledge their signatures before a Justice of the Peace; Bowling W. Field, M. R. Moore, Justice of the Peace, and witness were all that were present when the Justice of the Peace attested the deed. Bowling W. Field said, " that signature was made by his wife, Levada Field." Witness went to lay off the homestead the day before the deed was signed; Bowling W. Field related to him the contract between him (Field) and James W. Burnside; the deed was signed by B. W. and Levada Field before the homestead was granted; the deed was signed at the residence of B. W. Field, and not in Dahlonega; W. A.

Burnside, Ordinary, was the brother of James W. Burnside. Plaintiff introduced the following paper:

"Mr. BIRD TERRY : You will please deliver possession of lot known as the 'Field fraction,' to James W. Burnside, on the 1st day of January, 1871.

(Signed)                    " BOWLING W. FIELD.

"Dahlonega, Ga., Dec. 19th, 1870."

Under the charge of the Court, the jury returned a verdict for the plaintiff for the premises in dispute, with $50 for rent. Whereupon, defendants moved for a new trial, upon the following, among other grounds:

1st. Because the execution of the deed from Bowling W. Field and Levada Field to James W. Burnside was attested by but one witness at the signing by Levada Field, and was, therefore, invalid.

2d. Because William A. Burnside, Ordinary of Lumpkin county, was a brother of the plaintiff, and related to said plaintiff within the fourth degree of consanguinity, and said deed was submitted to said W. A. Burnside, as Ordinary of said county, and was passed upon and approved by said Ordinary, without the consent of the said Bowling W. Field and Levada Field.

3d. Because the approval of said deed by said Ordinary was null and void; he, the said W. A. Burnside, being incompetent on account of relationship to act upon or approve said deed, without the consent of B. W. and Levada Field.

4th. Because said deed is only a mortgage and passed no title to the premises therein conveyed.

5th. Because the consideration of said deed, as therein set forth, was illegal and against public policy.

6th. Because the Court, after correctly charging the jury that, "No Ordinary can sit in any cause or proceeding in which he is related to either party within the fourth degree of consanguinity or affinity," and further, that "if an Ordinary give a judgment, or does a judicial act which the law

does not allow him to do, such judgment or act is void and of no effect;" erred in charging as follows: "But when there is no litigation, I think it will do, and the judgment or act of the Ordinary will be valid. Determine from the evidence whether there was any litigation before the Ordinary."

The Court sustained the motion for a new trial, and plaintiff in error excepted, and assigns said ruling as error.

WIER BOYD; R. A. QUILLIAN, for plaintiff in error, cited Code, sections 2713, 2714, 2715; 9 Ga. R., 151; 32 *Idem*, 592; 40 Ga. R., 44; 2 Parsons on Contracts, 500. As to execution of deed: 16 Ga. R., 424; 17 *Idem*, 295; 22 *Idem*, 415; 100 Mass., 101; Code, section 2651. One creditor can prefer another: Code, section 1943.

GEORGE D. RICE; J. N. DORSEY, for defendants, cited Deed or Mortgage: 15 Ga. R., 558; 1 Powell on Mort., 4; 2 Johns Ch. R., 189; 15 *Idem*, 555; Code, section 1947; 9 Ga., 151; 1 *Ibid.*, 193; Code, section 1944. The consideration of the deed is against public policy: 2 Johns R., 386; 12 *Ibid.*, 305; 19 *Ibid.*, 311. The deed was a fraud on the creditors of B. W. Field: Harrison *vs.* Hatcher, decided 27th February, 1872: 41 Ga., 315; 16 *Ibid.*, 416. The homestead was not legally conveyed. The execution of this instrument, whether deed or mortgage, was not in conformity to law: Code, sections 2643, 1945. The Ordinary being related to one of the parties to the contract, the approval was void.

WARNER, Chief Justice.

This was an action of ejectment, brought by the plaintiff against the defendants to recover the possession of lot of land number forty, in the tenth district of Hall county. On the trial of the case, the jury found a verdict for the plaintiff. A motion was made for a new trial, on the several grounds specified in the record. The Court granted the new trial, whereupon the plaintiff excepted. The plaintiff claimed a title

to the land, under a deed made by the defendants, on the 30th day of April, 1869, to him, as set forth in the record; and one of the questions made on the motion for a new trial was, whether this deed, according to its legal effect, was a conditional deed, conveying a title to the land, or a mortgage. A mortgage in this State is only a security for a debt, and passes no title. No particular form is necessary to constitute a mortgage, but it must clearly indicate *the creation of a lien,* specify the debt to secure which it is given, and the property upon which it is to take effect: Code, 1944, 1945. A contract may be absolute or conditional. The classification of any contract must depend upon a rational interpretation of *the intention* of the parties: Code, 2679. It is recited in the deed, that Burnside, the plaintiff, held in his own right judgments against Field, one of the defendants, amounting to the sum of $3,000, and that Field had ob_tained the benefit of the homestead law upon his real prop_erty, to which Burnside filed no objections, upon the following agreement: that, if Field did not pay the money due on the judgments on or before the 1st day of January, 1871, then the lot of land (number forty, in the tenth district, valued at $1,000) is to be the right and property of said Burnside, his heirs and assigns forever, in fee simple, and the said judgments to be considered paid off and satisfied. In consideration of this agreement, Field and his wife, Levada, conveyed the lot of land to Burnside, in fee simple, and de- clared that it was a conditional deed, and not a mortgage, and becomes absolute upon the non-payment of the sum o money due on said judgments at the time specified, and that Burnside has the right to enter and take possession of said lot of land at the expiration of the time. The agreement between the parties was, that the judgments held by Burnside, amounting to $3,000, should be paid off and discharged by conveying the lot of land worth $1,000; and if the $3,000 was not paid by the 1st of January, 1871, the land belonged to Burnside, and the debt of $3,000 was paid off and

Burnside *vs.* Terry *et al.*

extinguished. Such was the contract and intention of the parties, as manifested by the deed and the recitals therein. The $3,000 was not paid by Field by the time stipulated, and the result was, by the terms of the deed, that the land became the property of Burnside ; and Fields' debt, due to Burnside, of $3,000, was paid off and extinguished by the conveyance of the lot of land worth $1,000. In our judgment, this was a deed conveying the land upon a condition subsequent, and not a mortgage, according to the declared intention of the parties : Code, 2268–2273. Whether this agreement between Field and Burnside operated as a fraud upon the other creditors of Field, we express no opinion, as they nor the character of their claims are not now before us.

Another ground of error assigned is, that the deed of Field and his wife to Burnside for the lot of land in controversy was approved by W. A. Burnside, the Ordinary, who was the brother of James W. Burnside, the grantee in the deed, that he was incompetent to do so on account of his relationship to one of the parties, and that Mrs. Field was not present at the time of such approval by the Ordinary. The 193d section of the Code declares, " that no Judge, or Justices of any Court, no Ordinary, Justice of the Peace, nor presiding officer of any inferior judicature, or commission, can sit in any cause or *proceeding,* in which he is pecuniarily interested, or related to either party within the fourth degree of consanguinity or affinity." The property set apart under the Homestead Act is declared to be for the use of the wife or widow and children, during her life or widowhood, and at her death or marriage to be equally divided between the children of her former husband then living : see twelfth section, Act of 1868. The wife and children are the principal beneficiaries under the Homestead Act. The homestead property, set apart as such, cannot be alienated by the husband, but may be sold by him and his wife, *jointly,* with the approval of the Ordinary. The approval of the Ordinary is required for the protection of the wife and children ; and

Burnside *vs.* Terry *et al.*

this is not only a *proceeding* before the Ordinary, but is an important function, which he is required to perform, in the exercise of his judgment as a judicial officer, and he ought to be clearly satisfied in all cases that the wife's consent is *freely* and *voluntarily* given, and that the sale will be for the benefit of the wife and children.   Under the provisions of our Code, the wife cannot bind her separate estate by a contract to pay her husbands debts, nor by a sale of her separate estate to a creditor of her husband, in extinguishment of his debts: Code, 1773.   The same reasons would seem to be applicable to the sale of the homestead in extinguishment of the husband's debts.   In this case, the wife joined with the husband in selling a part of the homestead in extinguishment of the judgment debts of her husband, and if the homestead is to be held good as against the preëxisting debts of the husband, the Ordinary should not have approved the sale of the land for that purpose.   The Ordinary who approved the sale was the brother of the party to whom the sale was made, as appears from the evidence in the record, the wife not being present at the time of the approval and consenting thereto.   In our judgment, the deed was invalid because it was approved by the Ordinary who was related to one of the parties to it, within the degree of consanguinity prohibited by the Code, and that the new trial should have been granted on that ground.

Let the judgment of the Court below, granting a new trial, be affirmed.